## GATES *v.* BELL.

A judgment rendered on a rule taken on a sheriff, to show cause why he should not be declared liable as surety, on account of his neglect to take the surety required by the court on releasing sequestered property, if not signed by the judge, cannot have the force of *res judicata.* C. P. 546.

A sheriff will not be personally responsible, where he acts under the orders of a court having jurisdiction in the matter.

An express authority is necessary to authorise an agent to bind his principal, by a contract of suretyship, for a stranger.

A sheriff ordered by the court to release sequestered property on the execution of a bond by defendant with a certain person as surety, released the property on the execution of a bond by an agent of the person designated as surety in the name of the latter, but who having no express authority to bind his principal in such a contract, could not bind him as surety. *Held,* that though plaintiff's judgment against his debtor is *prima facie* evidence of the extent of injury in consequence of the sheriff's failure to take the surety ordered, yet, that having acted in good faith, he will be responsible for such damages only as the plaintiff is proved to have sustained by reason of the bond not being obligatory on the party by whom it was to have been signed as surety; and where he is shown to have been insolvent at the date of the judgment against the principal, nothing can be recovered against the sheriff.

APPEAL from the District Court of the First District, *Buchanan, J. Bradford,* for the appellant. *H. D. Ogden,* contrâ. The judgment of the court was pronounced by

SLIDELL, J. The property of the defendant was sequestrated, and he obtained an order of court that the property be released on his giving bond with *T. G. Chamberlin,* as his surety, in the sum of $1500. Under this order the sheriff released the property to the defendant, upon his giving a bond in the usual form, with *T. G. Chamberlin* as surety, conditioned for the payment of such judgment as might be rendered in the suit. The bond, however, was not signed by *T. G. Chamberlin* personally, but by one *G. Chamberlin,* who signed as his agent. Judgment having been rendered in favor of *Gates* against *Bell,* a *fieri facias* was issued and returned *nulla bona.* When the bond was returned by the sheriff, objections were formally made to it in writing by the plaintiff. Among these objections was an allegation of a want of authority in *G. Chamberlin* to sign the name of *T. G. Chamberlin.* A rule was simultaneously taken upon the sheriff, to show cause why he should not be declared

liable as surety. Judgment was entered *ex parte* upon this rule against the sheriff, who accepted service of the rule but made no appearance. He was condemned to be personally liable to the plaintiff for his demand against the defendant *Bell*, in the same manner as the surety would have been. This judgment was never signed. Subsequently a rule was taken upon the sheriff, to show cause why judgment should not be entered against him as surety for the amount of the plaintiff's judgment against *Bell*. There was judgment discharging this rule, and the plaintiff has appealed.

It is urged that the judgment rendered on the first rule was *res judicata* upon the question of the sheriff's responsibility as surety. The court below held otherwise, considering the first judgment against the sheriff as in the nature of a judgment by default. Whether it was properly so characterised or not it seems to us inoperative as *res justicata*, from the fact of its being unsigned and consequently incomplete. C. P. 546. See also C. P. 229.

It is also urged by the plaintiff that the order of court, being *ex parte*, was no authorisation to take *Chamberlin* as surety. We think otherwise. Whether it was erroneous or not to grant the order to bond *ex parte*, that order was the order of a court having jurisdiction in the matter, and as such was a justification to the sheriff. Bacon's Abridgt. *verbo* Sheriff. *Saffry* v. *Jones*. 2 Barnwall and Adolphus 598.

The next point taken by the plaintiff is that *G. Chamberlin*, had no authority to sign the name of *T. G. Chamberlin* to the bond. The only evidence to establish such authority adduced by the sheriff is, a notarial power of attorney by which *T. G. Chamberlin*, in his individual name, and in the name of his commercial firm of *T. G. Chamberlin & Co.* constitutes *G. Chamberlin* his and their true and lawful attorney in fact, general and special; giving and granting unto the said attorney full power and authority. for and in his and their name, and to his and their use, to conduct, manage, and transact all and singular his and their affairs, business, and concerns of whatsoever nature, to open and answer all letters addressed to said constituent, to make and endorse promissory notes in his and their name, &c., to sign judicial bonds, and other judicial obligations and documents. We cannot concur with the district judge in the opinion that this power of attorney authorised the signature of the constituent's name as surety, to the bond in question. There is nothing to show any connection whatever of the constituent's interests with the property bonded or the cause, nor that the contract was in any way directly or indirectly for the constituent's use or benefit. An express authority was necessary to authorise the agent to bind his principal by a contract of suretyship for a stranger. The attorney must be considered as having acted without authority, and therefore the bond is not, as directed by the court, a bond executed by *T. G. Chamberlin* as surety. See *Stainer* v. *Tysen*, 3 Hill, 281. *North River Bank* v. *Aymar*. Ibid 263.

The sheriff having given up the property sequestered without receiving such a bond as was ordered by the court, the question then arises—what is his responsibility? Is he to be treated as though he were himself surety on the bond, and thus responsible for the judgment upon the default of the principal obligor, or is he only to be held liable for such damages as the plaintiff may have sustained by reason of the bond not being obligatory upon *T. G. Chamberlin?* Some cases are to be found in the books in which the sheriff is held liable for the amount of the judgment, without abatement on account of mitigating circumstances. For example, the case of a sheriff who has falsely retured bail, when

GATES
v.
BELL.

he took none. But with a few exceptions the general rule is well settled that, though the judgment recovered by the plaintiff against the debtor is *prima facie* evidence of the extent of the injury which the plaintiff has sustained by the officer's breach of duty, yet it is competent for the officer to prove in mitigation of the injury any facts shewing that the plaintiff has suffered nothing, or but little, by his unintentional default or breach of duty.

In the present case the sheriff, evidently in good faith, intended and attempted to comply with the order of the court; and his mistake was upon a question of law—the interpretation. of a power of attorney and the extent of the authority conferred by it—a mistake which should not be visited harshly upon him, especially when we find the judge who tried this cause taking the same view of the power as the sheriff did. We therefore consider this case one of those in which mitigating circumstances are to be considered; and the true enquiry is, what is the real and actual damage which the plaintiff has sustained by not having a bond obligatory upon *T. G. Chamberlin*?

The evidence is that, in March, 1842, *Chamberlin* was prosecuted in the Federal court by proceedings in bankruptcy. It is also expressly admitted, that he was insolvent when judgment was rendered in this case against *Bell.* We cannot, therefore, say that the plaintiff would have been in any better situation if *Chamberlin* had really been bound. It is possible that the plaintiff would not have been as well off. The attorney who executed his mandate is clearly bound himself, and *non constat*, under the evidence, that he is insolvent.

Judgment affirmed.